**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID NELSON,** | * | |
| **Plaintiff,** | * | |
| **v.** | | **Civil Action No. 13-596** |
| | * | |
| **MIDLAND FUNDING, LLC,** | | **PLAINTIFF DEMANDS TRIAL** |
| | * | **BY STRUCK JURY.** |
| **Defendant.** | * | |

## <u>COMPLAINT</u>

This case arises from the intentional and premeditated actions of Defendant, a debt collector, to coerce from Plaintiff payment of an alleged consumer debt that Plaintiff did not owe to Defendant, and about which Defendant never made any attempt provide any competent and admissible evidence (and, in fact, *never intended* to provide any competent and admissible evidence) in answer to the most basic questions regarding the validity of the debt, Defendant's ownership of the debt, or how the amount of money demanded from Plaintiff was calculated; actions that Defendant took in violation of the Fair Debt Collection Practices Act[1] (15 U.S.C. §1692 et seq [hereinafter referred to as "FDCPA"]) and state law, and that invaded Plaintiff's personal and financial privacy.

Due to the intentional and premeditated actions of Defendant, Plaintiff, by and through undersigned counsel, now comes to this Honorable Court and demands judgment against Defendant in an amount in excess of the jurisdictional limits of this Court, plus interest, attorney's fees, the costs incurred in this action, and for such other, further and different relief to which Plaintiff may be entitled under the circumstances, and as more specific grounds therefore, Plaintiff offers unto this Honorable Court as follows:

---

[1] Any reference to the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

# I.

## PARTIES

### PLAINTIFF

1.      Plaintiff, David Nelson (herein after referred to as "Plaintiff"), is a natural person who is a resident of Mobile County, Alabama, and is in excess of 19 years of age.

2.      Plaintiff is a "consumer" as that term is defined by the FDCPA. 15 U.S.C. §1692(a)(3).

### DEFENDANTS

4.      Defendant, Midland Funding, LLC (herein after referred to as "Defendant"), is a foreign corporation with its principal place of business in San Diego, California.  Defendant does business in Alabama.

5.      Defendant is a "debt collector" as that term is defined by the FDCPA. 15 U.S.C. §1692(a)(6).

# II.

## JURISDICTION AND VENUE

6.      This action is brought under Federal and Alabama law. This action is brought due to actions Defendant, a foreign corporation that does business in Alabama, took against Plaintiff, a resident of Alabama, and the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7.      Venue is proper in this Court because Defendant carried out the acts complained of by Plaintiff in Mobile County, Alabama, including filing against Plaintiff that certain collection lawsuit styled *Midland Funding, LLC v. David Nelson*, Case No. 02-SM-2013-901445.00 in the Small Claims Court of Mobile County, Alabama.

## III.

## BACKGROUND INFORMATION REGARDING THE PATTERN AND PRACTICE OF THE MANNER IN WHICH DEFENDANT CONDUCTS ITS COLLECTION BUSINESS IN ALABAMA

[An understanding of the intentional and premeditated manner by which Defendant goes about collecting consumer debts, such as the debt allegedly owed by Plaintiff (the pattern and practice of Defendant's business), is necessary to understand the substantive claims set forth by Plaintiff herein. The factual allegations contained in Section III of Plaintiff's Complaint are probative of Defendant's knowledge and intent relative to the actions taken against Plaintiff pursuant to Rule 404(b) of the applicable Rules of Evidence. *Webster v. Nations Recovery Center*, Co.2009, 2009 WL 2982649]

7.      Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

8.      Portfolios of consumer debts, primarily credit card debts of less than $10,000.00, are bundled and packaged as assets to be sold in the secondary market to debt collectors such as Defendant[2] after the original creditor ceases collection efforts or otherwise charges-off the accounts.[3]

9.      Defendant, a debt collector, is in the business of buying such portfolios of consumer debts.

10.     Defendant purchases these portfolios of consumer debts at deep discounts from the balances owed to the original creditor; in some cases such portfolios of consumer debts are purchased for as little as $.025 cents on the dollar.

---

[2] FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE, A WORKSHOP REPORT 13 (Feb. 2009) [hereinafter referred to as "Workshop Report"]; UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE, CREDIT CARDS: FAIR DEBT COLLECTION PRACTICES COULD BETTER REFLECT EVOLVING DEBT COLLECTION MARKETPLACE AND USE OF TECHNOLOGY 7 (Sept. 2009) [hereinafter referred to as "GAO Report"].

[3] The citations contained herein to the reports referred to as Workshop Report, GAO Report, DBA Comments, and Broken System are meant to establish and support the plausibility of the factual allegation to which each such reference applies, and to provide a beginning point for discovery. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

11.     Defendant, after purchasing such a portfolio of consumer debts, then attempts to collect the entire balance owed to the original creditor in an attempt to realize a profit.

12.     However, when Defendant purchases such a portfolio of consumer debts, it receives virtually no information regarding the alleged debts from the original creditor. Typically, Defendant receives from the original creditor nothing more than a Bill of Sale and a computerized summary (allegedly attached to the Bill of Sale as an Exhibit) containing limited information about the consumers.[4] Further, the original creditor, through the purchase agreement entered into with Defendant, refuses to warrant, and otherwise disclaims, the validity of the debts sold to Defendant.[5]

13.     The little information obtained by Defendant through the purchase of a portfolio of consumer debts may be enough to establish a contract between the original creditor and Defendant that is not so vague as to be considered void; however, the information provided regarding the debts is not sufficient to establish the validity of the debt, Defendant's ownership of the debt, or the calculation of the balance claimed, and it certainly is not sufficient to support a judgment against the consumer.

---

[4] Workshop Report, *supra* note 1, at 22.
[5] FEDERAL TRADE COMMISSION, THE STRUCTURE AND PRACTICES OF THE DEBT BUYING INDUSTRY (Jan. 2013), [hereinafter referred to as "Structure and Practices of the Debt Buying Industry"], at C-8, wherein the FTC finds that the agreements between original creditors and Defendant commonly contain language such as:

> "Buyer acknowledges and agrees ... Bank has not and does not represent, warrant or covenant the nature, accuracy, completeness, enforceability or validity of any of the Accounts and supporting documentation provided by Bank to Buyer, and, subject to the terms of this Agreement, all documentation, information, analysis and/or correspondence, if any, which is or may be sold, transferred, assigned and conveyed to Buyer with respect to any and all Accounts is sold, transferred, assigned, and conveyed to Buyer on an AS IS, WHERE IS basis, WITH ALL FAULTS." (original emphasis) (spot sale of bank accounts and receivables)

14.     Defendant will blindly rely upon the information supplied to it by the original creditor, the accuracy of which is specifically disclaimed in the purchase agreement, and will make no effort to verify:

     a.    That the consumer entered into a contract, opened an account, or otherwise created the alleged debt;

     b.    The date the consumer allegedly defaulted on the alleged debt or how the consumer allegedly defaulted;

     c.    The date the alleged debt was charged-off;

     d.    The amount due on the alleged debt on the date of default/charge-off; or

     e.    How the amount of money claimed from the consumer was calculated (the principal, interest, fees, and other charges).

15.     Defendant will then, without taking any reasonable steps to ensure the validity of the alleged debt, use the scant information it receives to conduct informal collection efforts.

16.     The most common informal collection effort used by Defendant[6] is to *continually* attempt to contact the consumer by phone or mail.  Such informal collection efforts typically begin in a rather civil tone but can become abusive, including calling the consumer late at night, contacting the consumer at work, informing the consumer's coworkers of the alleged debt, contacting the consumer's family and friends, etc.

17.     Should the consumer, during the time the Defendant is engaged in such informal collection efforts, deny owing anything to Defendant and demand verification of the alleged

---

[6] The informal collection efforts described in this Paragraph are only meant to provide information regarding the manner by which Defendant attempts to collect consumer debts.  The informal collection efforts described in this Paragraph are the most common tactics used to collect consumer debts by Defendant.  However, at times, Defendant's informal collection efforts can become very creative, such as offering a "pre-approved" credit card with a limit set just above the amount allegedly owed by the consumer, so long as the alleged balance of the debt is transferred to the credit card.  The actions described in this Paragraph may not have been taken by Defendant in its attempt to collect the debt allegedly owed by Plaintiff.  If such actions were taken by Defendant in its attempt to collect the debt allegedly owed by Plaintiff, such actions will be outlined in section V herein.

debt, Defendant will not make any reasonable effort to substantiate the debt it claims the consumer owes (other than, perhaps, providing the consumer with portions of the computerized information it obtained through the purchase of the portfolio of consumer debts); instead, Defendant simply intensifies its informal collection efforts.

18.     When its informal collection methods do not result in payment by the consumer, Defendant turns to litigation in the State Courts of Alabama.

19.     It is important to note at this point that Defendant is not allowed to, among other things, *threaten* to file a lawsuit against the consumer when it has *no intention* of actually doing so as such a representation would be made in violation of the FDCPA's ban on false, misleading or deceptive communications.[7] [8]

20.     Therefore, in order to utilize litigation as a tool to coerce payment from the Alabama consumer, Defendant refers its collection efforts to one of 10 or so collection law firms in Alabama that file collection law suits for debt collectors throughout the state.

21.     Defendant's collection law firm, which is assigned thousands of collection cases against Alabama consumers each year by Defendant, typically employs its own informal collection efforts in the hope that calls and letters from a collection law firm will be enough to coerce an ill-informed and unsophisticated consumer into paying the alleged debt.

22.     Defendant understands that it is not allowed to *threaten* to file a lawsuit against the consumer when it has *no intention* of actually doing so; therefore, in order to side step this FDCPA requirement, Defendant, without taking any reasonable steps to ensure the validity of the alleged debt (and instead, blindly relying upon the information supplied to it by the original

---

[7] 15 U.S.C. §1692(e)(5); *Brown v. Card Services Center*, 464 F.3d 450 (3rd Cir. 2006).
[8] The citations contained herein to specific statutes and cases are included to aid the reader in understanding exactly what Plaintiff is claiming herein (or, in the case of footnote 8, what the Plaintiff is *not* claiming), and to avoid a dilatory Motion to Dismiss for Failure to State a Claim.

creditor - the accuracy of which is specifically disclaimed), takes its collection efforts one giant step further and actually files suit against the consumer in the Alabama Small Claims, District, or Civil Court in the county in which the consumer resides.

23.     Filing a state court collection lawsuit is not, by itself, a violation of the FDCPA so long as the lawsuit is filed in good faith, even if Defendant does not have in its possession all the proof it needs to establish its claims at the time the collection lawsuit is filed.[9]

24.     However, the thousands of state court collection lawsuits commenced in Alabama by Defendant each year are not filed in good faith.  Defendant's purpose in bringing such collection lawsuits is far more sinister than merely filing an action without possession, at the time of filing, of the complete "paper trail" needed to prove its claims at trial.  It is true that Defendant does not have any competent and admissible evidence substantiating its claims at the time it files its collection lawsuit; however, the fact concealed by Defendant is that it does *not have any intention* of ever obtaining any competent and admissible evidence to establish its claims.

25.     Defendant's purpose is, in reality, to use these collection lawsuits as a tool to coerce payment from the consumer.  The pattern and practice of Defendant's business, as it relates to collection lawsuits, is designed to coerce from the consumer payment of the alleged debt by preying upon the consumer that Defendant perceives to be ill-informed regarding the validity of the debt by targeting the consumer's sense of fear, his sense of embarrassment, his lack of understanding of Defendant's business, and his feeling of helplessness when being

---

[9] *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006); *Deere v. Javitch, Block & Rathnone, LLP*, 413 F.Supp.2d 866 (S.D. Ohio 2006); *Gonzalez v. Erskine*, WL 6822207 (S.D. Fla. 2008).

pursued by a participant in the multi-billion dollar per year debt collection industry[10] such as Defendant.

26.     Defendant's *modus operandi*, the pattern and practice of its business, is to engage in abusive, scattershot litigation by filing of thousands collection lawsuits against Alabama consumers each year in order to obtain default judgments and coerce settlement agreements from unrepresented consumers.

27.     Defendant has *no intention* of taking its claims to trial where it will be required to obtain, lay a proper evidentiary foundation for, admit, and otherwise present competent evidence to establish the validity of the alleged debt, Defendant's ownership of the alleged debt, how the amount of money demanded from the consumer is calculated, and otherwise substantiate the merit of its claims.

28.     Defendant's litigation efforts against the Alabama consumer consist merely of:

> a.     Filing a "canned" complaint that claims an amount due from the consumer and lists generic causes of action for Breach of Contract, Account Stated, and/or Money Had and Received.   The complaint rarely contains any information regarding the date the consumer defaulted on the alleged debt, the date the alleged debt was charged-off, the amount due on the alleged debt on the date of default/charge-off, how the amount claimed from the consumer (including principal, interest, fees, and other charges) was calculated, or the identity of the original creditor of the alleged debt[11];

---

[10] BARBARA SINSLEY, FED. TRADE COMM'N, DBA INTERNATIONAL'S COMMENTS RELATED TO DEBT COLLECTION FOR THE FTC DEBT COLLECTION WORKSHOP, 2-3, (June 2, 007) [hereinafter referred to as "DBA Comments"]; GAO Report, supra note 1, at 7.

[11] Although Defendant's Statement of Claim is not required to identify the original creditor pursuant to 15 U.S.C. §1692g(d), the failure of Defendant to identify the original creditor in its Statement of Claim violates 15 U.S.C. §1692e(10) as failing to do so is deceptive and misleading.

despite the fact that the Federal Trade Commission recommends that Defendant's complaint contain, at a minimum, such information.[12]

b.   Filing Motions for Default Judgment.

c.   Filing Motions to Continue in order to "ice" the unrepresented consumer in the hope that the consumer will be pressured by fear of the impending trial into paying the alleged debt.

d.   Appearing at trial through local counsel to take default judgments or to pressure unrepresented consumers into paying the alleged debt in order to avoid the implied embarrassment and fear of a trial that the unrepresented consumer feels confident he will lose.

29.   Defendant's litigation efforts against the Alabama consumer *do not* consist of:

a.   Taking any action to obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the consumer's liability for the alleged debt.

b.   Taking any action to obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed by the Defendant.

c.   Taking any action to obtain, through subpoena or otherwise, any witness from the original creditor to testify at trial as to the validity of the debt and the amount claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined above.

---

[12] FEDERAL TRACE COMM'N, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION (July 2010) [hereinafter referred to as "Broken System"].

d.     Taking any action to obtain, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. the documents that purportedly transferred the debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly lists the alleged debt).

e.     Taking any action to obtain, through subpoena or otherwise, any witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

f.     Appearing at trial with any of the aforementioned documents or witnesses needed to substantiate the merit of its claims against the consumer or otherwise attempting to prove, through competent and admissible evidence, its case at trial.

30.     Defendant's *intention* is to utilize its collection lawsuit as a means to obtain a default judgment against the consumer (as is the case in more than 45% of the cases where service of process is obtained), or to coerce payment from the unrepresented consumer (as is the case in more than 45% of the cases where service of process is obtained) by utilizing its collection lawsuit, and the impending trial, as the ultimate method if targeting the consumer's sense of fear, his sense of embarrassment, his lack of understanding of the judicial process, and his feeling of helplessness when being sued by Defendant.

31.     Defendant, through bringing and maintaining its collection lawsuit, represents to the consumer (and to the court) that it intends to prove its claims.  However, Defendant's *actual*

*intention* is not to prove its case, but to use the collection lawsuit to obtain a default judgment or as a tool to coerce payment from an unrepresented consumer; as such, Defendant brings and maintains its collection lawsuit in violation of the FDCPA as it is a threat to take an action (i.e. proving its case at trial) that Defendant does not actually intend to take.[13]

32.     Defendant, through bringing and maintaining its collection lawsuit, represents to the consumer (and to the court) that it intends to prove its claims.  However, Defendant's actual intention is not to prove its case, but to use the collection lawsuit to obtain a default judgment or as a tool to coerce payment from an unrepresented consumer; as such, Defendant brings and maintains its collection lawsuit in violation of the FDCPA as it is a false, deceptive and misleading action taken by Defendant in connection with collecting a debt or a false, deceptive and misleading means of collecting a debt.[14]

33.     Defendant, in its complaint, will state the character, amount, and legal status of the alleged debt and, in the face of the consumer's denial of the same, Defendant will maintain its allegations despite the fact that it does not have knowledge of the validity of the alleged debt or the existence of any facts that would substantiate its causes of action nor does it take, or *intend to take*, any reasonable steps to ensure the validity of the alleged debt or discover the existence of any facts that would substantiate its causes of action; as such, Defendant misrepresents the character, amount, and legal status of the alleged debt in violation of the FDCPA.[15]

34.     Defendant, in its complaint, will seek to recover monies that the consumer would only be liable to pay pursuant to a written agreement and, in the face of the consumer's denial

---

[13] 15 U.S.C. §1692e(5); Federal Trace Comm'n Commentary to the FDCPA, 53 Fed. Reg. 50097, 50106 (1988); *Brown v. Card Member Services*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, 752 F.Supp.2d 1293 (N.D. Georgia, Atlanta Division 2010); *Simmons v. Portfolio Recovery Assoc. et al*., 3:11-cv-280 (E.D. Tenn. 2012).
[14] 15 U.S.C. §1692e(10); *Williams v. Javitch, Block & Rathbone*, 480 F.Supp.2d 1016 (S.D. Ohio 2007); *Gigli v. Palisades Collection, LLC*, 2008 WL 3853295 (M.D. Pa 2008); *Kuria v. Palisades Acquisition XVI, LLC*, supra.
[15] 15 U.S.C. §1692e(A)(2); *Williams v. Javitch, Block & Rathbone*, supra; *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra; *Simmons v. Portfolio Recovery Assoc. et al*., supra.

that such an agreement exists, Defendant will maintain its allegation that such sums are due despite the fact that Defendant does not have knowledge of the existence of any such agreement nor does it take, or *intend* to take, any reasonable steps to prove the existence of such an agreement; as such, Defendant attempts to collect an amount not expressly authorized by an agreement or permitted by law in violation of the FDCPA.[16]

35.     Defendant's intention in filing its collection lawsuit is not to prove its case, but to use the collection lawsuit to obtain a default judgment or as a tool to coerce payment from an unrepresented consumer; an "unfair and unconscionable" action taken a violation of the FDCPA.[17]

36.     Defendant's utilization of thousands of abusive, scattershot collection lawsuits as a means to obtain default judgments against consumers (as is the case in more than 45% of the cases where service of process is obtained), or to coerce payment from unrepresented consumers (as is the case in more than 45% of the cases where service of process is obtained) by targeting the consumers' sense of fear and embarrassment, the consumers' lack of understanding of the judicial process, and the consumers' feeling of helplessness when being sued by Defendant, is an action taken by Defendant in bad faith, with reckless disregard for the consumers it sues, and is an abuse of process.[18]

37.     Too rarely, a consumer being sued by Defendant will file a timely answer and deny the allegations contained in Defendant's complaint.

---

[16] 15 U.S.C. §1692f(1); *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

[17] 15 U.S.C. §1692f; *Williams v. Javitch, Block & Rathbone*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra. Section 692f of the FDCPA prohibits debt collectors from utilizing "unfair and unconscionable" means to collect a debt. This phrase is "as vague as they come," but is the FDCPA's backstop, intended to cover actionable debt collection practices that may not be specifically addressed in §1692d and/or §1692e. *Williams v. Javitch, Block & Rathbone*, supra, 1023.

[18] *Williams v. Javitch, Block & Rathbone*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

38.     The consumer's answer being filed and a trial date being set does not, however, prompt Defendant to begin obtaining, through subpoena or otherwise, the documents and witnesses it will need to substantiate its claims at trial.  Instead, Defendant simply intensifies its collection efforts in the hope that it can pressure the unrepresented consumer into paying the debt in order to avoid the implied embarrassment and fear of a trial that the unrepresented consumer feels confident he will lose.

39.     Should Defendant's intensified collection methods not result in payment by the consumer, the parties will proceed to the day of trial.

40.     Defendant's collection attorney will appear and ask the consumer if he would like to "work something out."  Should the consumer refuse to "work something out," the parties will proceed to trial.

41.     Defendant will not appear at trial.

42.     Defendant's collection attorney, having appeared at trial with no witnesses and no competent and admissible evidence, will have no way to meet Defendant's burden of proof or otherwise substantiate its claims.

43.     The trial court will enter judgment in favor of the consumer or dismiss the Defendant's collection lawsuit with prejudice for failure to prosecute.

44.     However, it is inconsequential to Defendant that judgment will be entered in favor of the consumer (or its case is dismissed with prejudice) in every case where the consumer demands that Defendant prove its case through competent and admissible evidence.

45.     This is because Defendant's business is "a numbers game." For every consumer that fights back, there are dozens more that succumb to Defendant's coercive collection tactics or

allow Defendant to obtain a default judgment against them; yielding very substantial profits for Defendant.

**IV.**

**RECOGNITION OF THE WIDESPREAD ABUSE OF CONSUMERS BY DEBT COLLECTORS, THE REMEDIES AVAILABLE TO CONSUMERS FOR SUCH ABUSE, AND HOW THE ACTIONS OF DEFENDANT ARE VIEWED UNDER THE FDCPA**

46.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

47.     Congress, after taking note of the rampant abusive practices used by debt collectors such as Defendant, enacted the FDCPA.  The second part of the FDCPA, just after the title of the law, is entitled "Congressional Findings and Declaration of Purpose."

48.     Congress, in the section of the FDCPA entitled "Congressional Findings and Declaration of Purpose," stated:

    a.    There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.  Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

    b.    Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

    c.    Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

    d.    Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce.  Even where abusive debt collection practices are purely intrastate in character, they nevertheless affect interstate commerce.

    e.    It is the purpose of [the FDCPA] to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively

disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. §1692.

49.    Accordingly, Congress provided consumers with a private right of action against debt collectors such as Defendant that violate the FDCPA.[19]

50.    Because the FDCPA is a remedial statute, its language is construed broadly. Therefore, when considering claims brought against a debt collector under the FDCPA, the actions of the debt collector are analyzed from the perspective of the "least sophisticated consumer."

51.    Analyzing the actions of debt collectors from the perspective of the "least sophisticated consumer" is consistent with basic consumer-protection principals.  The purpose of the "least sophisticated consumer" standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious.  The fact that Defendant's collection lawsuit is clearly an action that would not deceive an experienced attorney does not diminish the power of Defendant's collection lawsuit to deceive others who are less experienced.

52.    Therefore, while Defendant's utilization of thousands of abusive, scattershot collection lawsuits against Alabama consumers as a means to obtain default judgments or to coerce payment from unrepresented consumers may not be a collection tactic that would deceive the undersigned or the Court, the actions of Defendant are certainly abusive when viewed from the perspective of the "least sophisticated consumer."  Further, while involvement in litigation is a day-to-day occurrence for undersigned counsel, defense counsel, Defendant, and the Court,

_____

[19] 15 U.S.C. §1692k.

Defendant's collection lawsuits have a very disruptive effect on the lives of the unrepresented consumers that are the targets of its lawsuits.

## V.

## PLAINTIFF'S FACTUAL ALLEGATIONS

53.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

54.     The intentional and premeditated actions of Defendant that give rise to this case are representative of its typical pattern and practice of utilizing thousands of abusive, scattershot collection lawsuits filed across Alabama each year in that Defendant intended to use its collection lawsuit as a means to obtain a default judgment against Plaintiff, or to coerce payment from Plaintiff by targeting Plaintiff's sense of fear and embarrassment, Plaintiff's lack of understanding of the judicial process, and Plaintiff's feeling of helplessness when being sued by Defendant.

55.     Defendant, a debt collector, is in the business of buying, at deep discounts, consumer debts from original creditors that have ceased collection efforts or otherwise charged-off the accounts and, after purchasing such consumer debts, attempting to collect the entire balance owed to the original creditor in order to realize a profit.

56.     Defendant claims that it purchased the consumer debt allegedly owed by Plaintiff.

57.     Defendant received from the original creditor virtually no information regarding the consumer debt allegedly owed by Plaintiff.  Defendant obtained from the original creditor nothing more than a Bill of Sale and a computerized summary (purportedly attached to the Bill of Sale as an Exhibit) containing limited information about Plaintiff.  Further, the original

creditor, through the documents exchanged with Defendant, refused to warrant, and otherwise disclaimed, the validity of the debts sold to Defendant.

58.     Defendant blindly relied upon the information supplied to it by the original creditor, the accuracy of which is specifically disclaimed, and made no effort to verify:

      a.    That Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt;

      b.    The date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted;

      c.    The date the alleged debt was charged-off;

      d.    The amount due on the alleged debt on the date of default/charge-off; or

      e.    How the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges).

59.     Defendant, without taking any reasonable steps to ensure the validity of the alleged debt, used the scant information it received regarding Plaintiff to attempt to collect the alleged debt by continually attempting to contact Plaintiff by phone and mail.

60.     Plaintiff did not own any debt to Defendant and therefore refused to make any payment to Defendant.

61.     Defendant, having failed in its attempt to obtain payment from Plaintiff by continually attempting to contact Plaintiff by phone and mail, assigned the collection account to Defendant's collection law firm.

62.     Defendant had no evidence that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; no evidence of the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; no evidence of the date the

alleged debt was charged-off; no evidence of the amount due on the alleged debt on the date of default/charge-off; no evidence of how the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges); and no evidence indicating that it was the owner of the alleged debt.

63.     Defendant, despite specific notice that its claim may be invalid, despite the fact that it knew, or should have known, that Plaintiff did not owe any debt to Defendant, despite its lack of evidence regarding the validity of the debt, and without taking any reasonable steps to ensure the validity of the alleged debt, sued Plaintiff.  Defendant took this action despite the fact that it knew, or should have known, that Plaintiff owed no debt to Defendant (a fact that Defendant would have uncovered had it taken any reasonable steps to ensure the validity of the alleged debt in light of the original creditor's disclaimer of the accuracy of the information provided to Defendant).

64.     Defendant's complaint indicated only the sum of money that it claimed from Plaintiff.

65.     The complaint filed by Defendant contained no information regarding the factual basis of its claims, the date Plaintiff allegedly defaulted on the alleged debt, the date the alleged debt was charged-off, the amount due on the alleged debt on the date of default/charge-off, how the sum of money claimed from Plaintiff was calculated.

66.     Defendant's intent, at the time of filing and throughout the litigation, was *not* to initiate the action and prove its claims in court; but, rather, to imply to Plaintiff, through its collection law firm and its collection lawsuit, that it was *willing* prove its claims and thereby intimidate or otherwise coerce Plaintiff into 1) paying Defendant or 2) taking no action and allowing Defendant to obtain a default judgment.

67.     Plaintiff did not own any debt to Defendant; therefore, it was impossible for Defendant to ever prove that Plaintiff owed any debt to Defendant.

68.     Plaintiff filed an answer in the collection lawsuit denying Defendant's claims and asking for verification of the alleged debt.

69.     Trial was set.

70.     Defendant never, at any time during the litigation, took any action to (and in fact *had no intention* taking any action to):

   a.     Verify the validity of the underlying debt or the existence of any facts that would substantiate its causes of action;

   b.     Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate Plaintiff's liability for the alleged debt (i.e. any document substantiating its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; any document indicating when Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; any document indicating the date the alleged debt was charged-off or the amount due on the alleged debt on the date of default/charge-off);

   c.     Obtain, through subpoena or otherwise, any competent and admissible documents from the original creditor to substantiate the monies claimed by Defendant (i.e. account statements, documents establishing the consumer's liability for the principal, interest, fees, and other charges, etc.);

   d.     Obtain, through subpoena or otherwise, a witness from the original creditor to testify at trial as to the validity of the debt and the amount

claimed and to lay a proper evidentiary foundation for the admissibility of the documents outlined above;

e.   Obtain, through subpoena or otherwise, any competent and admissible documents to substantiate Defendant's standing to collect the alleged debt (i.e. documents that purportedly transferred the alleged debt from the original creditor, through any intervening creditor, to Defendant, including the "exhibits" attached to such agreements that purportedly list the alleged debt); or,

f.   Obtain, through subpoena or otherwise, a witness to testify at trial as to the validity of Defendant's standing to collect the alleged debt and to lay a proper evidentiary foundation for the admissibility of the documents substantiating the same.

71.    Defendant never, at any point during the litigation, provided Plaintiff with any competent document to substantiate the validity of the alleged debt (indeed, it was impossible for Defendant to provide any such documentation as Plaintiff does not owe any debt to Defendant).

72.    Instead, Defendant, through its collection law firm, simply continued its collection efforts in the hope that it would pressure Plaintiff into paying the debt in order to avoid the implied embarrassment and fear of a trial that Plaintiff felt would be won by Defendant.

73.    Plaintiff retained undersigned counsel as attorney for Plaintiff in Defendant's collection lawsuit.

74.    The parties proceeded to trial.

75.    Defendant did not appear at trial.

76.     Defendant's collection attorney, having appeared at trial through local counsel and with no witnesses and no competent or admissible evidence, had no way to meet Defendant's burden of proof or otherwise substantiate its claims.

77.     The trial court dismissed Defendant's collection lawsuit with prejudice.

78.     Defendant filed no timely Notice of Appeal.

79.     The actions of Defendant, as described herein, resulted in Plaintiff being forced to spend time and energy defending Defendant's collection lawsuit.

80.     The actions of Defendant, as described herein, also resulted in Plaintiff experiencing emotional distress, anger, shame, frustration, fear, humiliation, and the extreme disruption of Plaintiff's every-day life that is the natural consequence of being sued.

**VI.**

**CAUSES OF ACTION AGAINST DEFENDANT**

**FIRST CAUSE OF ACTION:**

**VIOLATION OF THE FDCPA**

[It is possible that Defendant committed other acts in violation of the FDCPA, and Plaintiff reserves the right to add other violations to this list as additional information becomes available during the course of discovery and in accordance with the applicable *Rules of Civil Procedure*.]

[To be clear: Plaintiff's position, as set forth in this Cause of Action, is *not* that Defendant merely lacked knowledge of the facts underlying its collection lawsuit or that is lacked the proper "paper trail" at the time of filing its collection lawsuit as was the case in *Harvey v. Great Seneca Fin. Corp*., supra., and *Deere v. Javitch, Block & Rathnone, LLP*, supra.  Plaintiff's position in this Cause of Action is that Defendant's actions, and its practice of filing abusive, scattershot collection lawsuits, were carried out in bad faith, with reckless disregard toward Plaintiff, constituted an abuse of process, and were taken in violation of the FDCPA as set forth fully herein.  *Kuria v. Palisades Acquisition XVI, LLC*, supra; *Samuels v. Midland Funding, LLC*, 2013 WL 466386 (S.D. Ala. 2013); *Webb v. Midland Funding, LLC*. 2013 WL 360151 (N.D. Ala. 2013); and *Wood v. Midland Funding, LLC*, 2013 WL 360146, (N.D. Ala. 2013).]

81.     Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

82.     Defendant, at the time of filing its collection lawsuit and throughout the litigation process, *had no evidence, and had no intention of attempting to obtained any evidence*, to substantiate its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; no evidence of the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; no evidence of the date the alleged debt was charged-off; no evidence of the amount due on the alleged debt on the date of default/charge-off; no evidence of how the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges); and no evidence indicating that it was the owner of the alleged debt.

83.     Defendant, by bringing and maintaining its collection lawsuit, represented to Plaintiff (and to the court) that it intended to prove its claims  However, Defendant's actual intention was not to prove its case, but, rather, to use its collection lawsuit to obtain a default judgment against Plaintiff or as a tool to coerce payment from Plaintiff; as such, Defendant's act of bringing and maintaining its collection lawsuit was taken in violation of the FDCPA as it was a threat to take an action (i.e. proving its case at trial) that Defendant did not actually intent to take.[20]

84.     Defendant, by through bringing and maintaining its collection lawsuit, represented to Plaintiff (and to the court) that it intended to prove its claims.  However, Defendant's actual intention was not to prove its case, but, rather, to use its collection lawsuit to obtain a default judgment against Plaintiff or as a tool to coerce payment from Plaintiff; as such, Defendant's act of bringing and maintaining its collection lawsuit was taken in violation of the

---

[20] 15 U.S.C. §1692e(5); Federal Trace Comm'n Commentary to the FDCPA, 53 Fed. Reg. 50097, 50106 (198); *Brown v. Card Member Services*,supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

FDCPA as it was a false, deceptive and misleading action taken by Defendant in connection with collecting a debt or a false, deceptive and misleading means of collecting a debt.[21]

85.     Defendant, in its complaint, stated the character, amount, and legal status of the alleged debt it claimed Plaintiff owed and, in the face of Plaintiff's denial of the same, Defendant maintained its allegations, despite the fact that it had no knowledge of the validity of the alleged debt or the existence of any facts that would substantiate its causes of action  and did not take, or ever *intend to take*, any reasonable steps to ensure the validity of the alleged debt or discover the existence of any facts that would substantiate its causes of action; as such, Defendant misrepresented the character, amount, and legal status of the alleged debt in violation of the FDCPA.[22]

86.     Defendant, in its complaint, sought to recover monies that Plaintiff would only be liable to pay pursuant to a written agreement and, in the face of Plaintiff's denial that such an agreement exists, Defendant maintained its allegation that such sums were due despite the fact that Defendant had no knowledge of the existence of any such agreement and did not take, or ever *intend to take*, any reasonable steps to prove the existence of such an agreement; as such, Defendant attempted to collect an amount not expressly authorized by an agreement or permitted by law in violation of the FDCPA.[23]

87.     Defendant's intention in filing its collection lawsuit was not to prove its case, but to use its collection lawsuit to obtain a default judgment or as a tool to coerce payment from

---

[21] 15 U.S.C. §1692e(10); *Williams v. Javitch, Block & Rathbone*, supra; *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.
[22] 15 U.S.C. §1692e(A)(2); *Williams v. Javitch, Block & Rathbone*, supra; *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.
[23] 15 U.S.C. §1692f(1); *Gigli v. Palisades Collection, LLC*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

Plaintiff despite the fact that it knew, or should have known that Plaintiff owed no debt to Defendant; an "unfair and unconscionable" action taken a violation of the FDCPA.[24]

88.     Defendant's intention to utilize its collection lawsuit (as it does to thousands of other Alabama consumers through its abusive, scattershot collection lawsuits) as a means to obtain a default judgment against Plaintiff, or to coerce payment from Plaintiff by targeting Plaintiff's sense of fear and embarrassment, Plaintiff's lack of understanding of the judicial process, and Plaintiff feeling of helplessness when being sued by Defendant, was an action taken by Defendant in bad faith, with reckless disregard of Plaintiff, and was an abuse of process.[25]

89.     The actions of Defendant, as described herein, resulted in Plaintiff begin forced to spend time and energy defending Defendant's collection lawsuit.

90.     The actions of Defendant, as described herein, also resulted in Plaintiff experiencing emotional distress, anger, shame, frustration, fear, humiliation, and the extreme disruption of Plaintiff's every-day life that is the natural consequence of being sued.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter a judgment finding Defendant liable to Plaintiff, and enter judgment in favor of Plaintiff for:

a.  Statutory damages in the amount of $1,000.00 in accordance with 15 U.S.C. §1692(a)(2)(A);

b.  The actual damages suffered by Plaintiff as a result of Defendant's actions in accordance with 15 U.S.C. §1692(a)(1);

c.  Plaintiff's costs and attorney's fees in accordance with 15 U.S.C. §1692(a)(3); and,

---

[24] 15 U.S.C. §1692f; *Williams v. Javitch, Block & Rathbone*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra. Section 692f of the FDCPA prohibits debt collectors from utilizing "unfair and unconscionable" means to collect a debt. This phrase is "as vague as they come," but is the FDCPA's backstop, intended to cover actionable debt collection practices that may not be specifically addressed in §1692d and/or §1692e. *Williams v. Javitch, Block & Rathbone*, supra, 1023.
[25] *Williams v. Javitch, Block & Rathbone*, supra; *Kuria v. Palisades Acquisition XVI, LLC*, supra.

d.   For such other, further, and different relief to which Plaintiff may be entitled and that

this Honorable Court may deem just and proper.

## SECOND CAUSE OF ACTION:

## <u>INVASION OF PRIVACY</u>

91.   Plaintiff incorporates and realleges each and every allegation set forth above and

incorporates the same herein by reference.

92.   Alabama law recognizes Plaintiff's right to be free from invasions of privacy, and

Defendant violated Alabama law as described in this Complaint.

93.   Congress explicitly recognized a consumer's inherent right to privacy in

collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its

findings:

> *Abusive debt collection practices contribute* to the number of personal
> bankruptcies, to marital instability, to the loss of jobs, and *to invasions of
> individual privacy.*

15 U.S.C. §1692(a) (emphasis added).

94.   Congress further recognized a consumer's right to privacy in financial data in

passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for

a broad range of "financial institutions" including Defendant (albeit without a private right of

action), when it stated as part of its purposes:

> It is the policy of the Congress that *each financial institution has an affirmative
> and continuing obligation to respect the privacy of its customers* and to protect
> the security and confidentiality of those customers' nonpublic personal
> information.

15 U.S.C. §6801(a) (emphasis added).

95.     Defendant intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt that is not owed by Plaintiff and thereby invaded Plaintiff's privacy.

96.     Defendant intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of attempting to collect the alleged debt that Plaintiff did not owe to Defendant (including continually calling and mailing Plaintiff and filing its collection lawsuit against Plaintiff), thereby invading and intruding upon Plaintiff's right to privacy.

97.     Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

98.     Defendant's intentional and premeditated act of engaging in the above-described illegal collection conduct against Plaintiff resulted in multiple intrusions and invasions of privacy by Defendant, which occurred in a way that would be highly offensive to a reasonable person in Plaintiff's position.

99.     Plaintiff, as a result of the intrusions and invasions of privacy by Defendant as described herein, is entitled to actual damages from Defendant in an amount to be determined at trial.

100.    Further, because the acts of Defendant were committed with malice, intent, wantonness, and/or recklessness, Defendant is subject to punitive damages.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant and award Plaintiff injunctive relief to prevent future violations of Alabama Law and Federal Law by Defendant, and, in addition thereto, award Plaintiff all

damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

### THIRD CAUSE OF ACTION:

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT EMPLOYEES OR AGENTS

101.    Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

102.    Defendant purchases portfolios of consumer debt at deep discounts from the balance owed to the original creditor; in some cases for as little as $.025 cents on the dollar. Defendant, after purchasing such consumer debt, attempts to collect the entire balance owed to the original creditor in order to realize a profit.

103.    Defendant's business, by its very nature, is a "numbers game." Defendant understands that not every alleged debt that it purchases will yield a profit; therefore, in order to maximize its bottom-line, Defendant attempts to coerce from as many consumers as possible as much money as possible.

104.    Defendant, in order to maximize its collection rate and bottom-line, has developed a pattern and practice of doing business that is designed to coerce payment from the consumer by preying upon the consumer that Defendant perceives to be ill-informed regarding the validity of the debt through targeting the consumer's sense of fear, his sense of embarrassment, his lack of understanding of Defendant's business, and his feeling of helplessness when being pursued by Defendant.

105.    As such, Defendant's employees and/or agents are allowed and encouraged to break the law in order to collect debts.

106.    Defendant is aware of the wrongful conduct of its employees and/or agents.

107.    Defendant negligently, wantonly, and/or intentionally, with malice and aforethought, hired, trained, retained, and/or supervised incompetent debt collection employees, agents, and/or entities who were allowed and/or encouraged to violate the law in the manner experienced by Plaintiff and described herein.

108.    Defendants are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff by such incompetent debt collection employees, agents, and/or entities and the damages suffered by Plaintiff.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant and award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

## FOURTH CAUSE OF ACTION:

### NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

109.    Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

110.    Defendant, in order to maximize its collection rate and bottom-line, and consistent with its pattern and practice of doing business, attempted to coerce from Plaintiff payment of a debt that Plaintiff did not owe to Defendant, by assuming Plaintiff to be ill-informed regarding the validity of the debt and targeting Plaintiff's sense of fear and embarrassment, Plaintiff's lack

of understanding of Defendant's business, Plaintiff's feeling of helplessness when being sued by Defendant, and in the other ways set forth herein.

111.    Defendant, in attempting to coerce payment from Plaintiff, acted negligently, maliciously, wantonly, recklessly, and/or intentionally in their dealings with Plaintiff as set forth in this Complaint.

112.    Defendant violated all of the duties it had to Plaintiff and such violations were premeditated and made intentionally, willfully, recklessly, maliciously, wantonly, and/or negligently.

113.    As a result of Defendant's conduct, action, and/or inaction, Plaintiff has suffered damage as set forth herein.

114.    Defendant's negligent, malicious, wanton, reckless, willful, and/or intentional conduct, as described herein, proximately caused the damage suffered by Plaintiff.

115.    It was foreseeable that the actions of Defendant would lead, and did in fact lead, to the exact type of harm suffered by Plaintiff; and Defendant did in fact foresee that its action would lead to such harm as Defendant intended to use the harm it caused to Plaintiff as a tool to coerce payment of the alleged debt.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant and award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

## FIFTH CAUSE OF ACTION:

## <u>MALICIOUS PROSECUTION</u>

116.    Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

117.    Defendant, without taking any reasonable steps to ensure the validity of the alleged debt and otherwise without probable cause, filed its collection lawsuit against Plaintiff *without any evidence, and without the intention of attempting to obtain any evidence*, to substantiate its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; no evidence of the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; no evidence of the date the alleged debt was charged-off; no evidence of the amount due on the alleged debt on the date of default/charge-off; no evidence of how the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges); and no evidence indicating that it was the owner of the alleged debt.

118.    Defendant filed its collection lawsuit maliciously and with the intent not to prove its case, but, rather, to use its collection lawsuit to obtain a default judgment against Plaintiff or as a tool to coerce payment from Plaintiff.

119.    As a result of Defendant's conduct, action, and/or inaction, Plaintiff has suffered damage as set forth herein.

120.    Defendant's negligent, malicious, wanton, reckless, willful, and/or intentional conduct, as described herein, proximately caused the damage suffered by Plaintiff.

121.    It was foreseeable that the actions of Defendant would lead, and did in fact lead, to the exact type of harm suffered by Plaintiff; and Defendant did in fact foresee that its action

would lead to such harm as Defendant intended to use the harm it caused to Plaintiff as a tool to coerce payment of the alleged debt.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant and award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.

## SIXTH CAUSE OF ACTION:

## ABUSE OF PROCESS

122.   Plaintiff incorporates and realleges each and every allegation set forth above and incorporates the same herein by reference.

123.   Defendant filed and maintained its collection lawsuit against Plaintiff *without any evidence, and without the intention of attempting to obtain any evidence*, to substantiate its claim that Plaintiff entered into a contract, opened an account, or otherwise created the alleged debt; no evidence of the date Plaintiff allegedly defaulted on the alleged debt or how Plaintiff allegedly defaulted; no evidence of the date the alleged debt was charged-off; no evidence of the amount due on the alleged debt on the date of default/charge-off; no evidence of how the amount of money claimed from Plaintiff was calculated (the principal, interest, fees, and other charges); and no evidence indicating that it was the owner of the alleged debt.

124.   Defendant's purpose in maintaining its collection lawsuit was not to prove its case at trial but, rather, to pervert the process in the hope of obtaining a default judgment against Plaintiff or to use the process as a tool to coerce payment from Plaintiff.

125.    Defendant's perversion of process was carried out maliciously and intentionally.

126.    As a result of Defendant's conduct, action, and/or inaction, Plaintiff has suffered damage as set forth herein.

127.    Defendant's malicious and/or intentional conduct, as described herein, proximately caused the damage suffered by Plaintiff.

128.    It was foreseeable that the actions of Defendant would lead, and did in fact lead, to the exact type of harm suffered by Plaintiff; and Defendant did in fact foresee that its action would lead to such harm as Defendant intended to use the harm it caused to Plaintiff as a tool to coerce payment of the alleged debt.

WHEREFORE, the premises considered, Plaintiff prays that this Honorable Court enter judgment against Defendant and award Plaintiff all damages allowable by law (including statutory, actual, compensatory, nominal, and punitive damages), the costs, expenses, and fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and this Honorable Court may deem just and proper.

## VII

## **JURY DEMAND**

Due to the intentional and premeditated actions of Defendant, Plaintiff has come to this Honorable Court and demanded judgment against Defendant in an amount in excess of the minimum jurisdictional limits of this Court, plus interest, the costs and attorney's fees incurred in this action, and for such other, further, and different relief to which Plaintiff may be entitled and that this Honorable Court may deem just and proper.  In order to fairly determine the validity of the facts set forth herein and determine the amounts due Plaintiff from Defendant, Plaintiff herby **DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

JRC Legal


s/ John R. Cox
John R. Cox (COX030)
9786-A Timber Circle
Spanish Fort, Alabama 36527
251.517.4753
jrc@jrcoxlaw.com


**Defendant to be served via certified mail as follows:**


Midland Funding, LLC
c/o CSC Lawyers Incorporating Services, Inc., its Registered Agent in Alabama
150 South Perry Street
Montgomery, Alabama 36104